IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 11-00664 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THE |
| | ) | GOVERNMENT'S:  (1) MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT; |
| | ) | AND (2) MOTION FOR DEFAULT |
| LEABERT F. LINDSEY, KAREN | ) | JUDGMENT |
| A. LINDSEY, SIGNATURE | ) | |
| GROUP HOLDINGS, INC., STATE | ) | |
| OF HAWAII DEPARTMENT OF | ) | |
| TAXATION, STATE OF HAWAII | ) | |
| DEPARTMENT OF HEALTH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING THE GOVERNMENT'S:  (1) MOTION FOR SUMMARY JUDGMENT; AND (2) MOTION FOR DEFAULT JUDGMENT

## I.  INTRODUCTION

Plaintiff United States of America (the "Government") moves for

summary judgment against Defendants Leabert F. Lindsey ("Mr. Lindsey") and

Karen A. Lindsey ("Mrs. Lindsey") (collectively, "the Lindseys") to reduce to

judgment certain federal income tax assessments, to foreclose federal tax liens on

real property owned by the Lindseys at 74-4924 Kiwi Street, Kailua Kona, Hawaii

96740 (the "Kiwi property"), and to obtain an order forcing the sale of the Kiwi

property to satisfy those liens.  The Government also moves for default judgment

against Defendants Signature Group Holdings, Inc. ("Signature Group"), and the State of Hawaii Department of Health ("Department of Health").  Based on the following, the court GRANTS the Government's Motion for Summary Judgment and Motion for Default Judgment.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   *Mr. Lindsey's Tax Liability*

Mr. Lindsey failed to file individual federal income tax returns for tax years 1997 through 2003.  *See* Doc. No. 58-3, Decl. of Maria C. Haydn ¶ 6.  Based on that failure, the Internal Revenue Service ("IRS") assessed federal income tax liabilities (Forms 4340) against Mr. Lindsey using available information, including Forms 1099 and Forms W-2 for tax years 1997-2003.  *Id.* ¶¶ 7-19; Doc. Nos. 58-4 - 58-21, Gov't Exs. 1-18 to Haydn Decl.  The IRS sent Mr. Lindsey Notices of Deficiency with the 1997-2002 assessments and demands for payment.  Doc. No. 58-3, Haydn Decl. ¶¶ 16-19; Doc. Nos. 58-18 - 21, Gov't Exs. 15-18 to Haydn Decl.  As of April 15, 2013, the total unpaid balance of all federal income tax liabilities assessed against Mr. Lindsey for tax years 1997-2003 is $210,090.78.  Doc. No. 58-3, Haydn Decl. ¶¶ 20-21.  Of that amount, $135,183.13 represents the

balance due on the assessments and $74,907.65 represents accrued, but unassessed, interest pursuant to 26 U.S.C. §§ 6601, 6621(a)(2) and 26 C.F.R. § 301.6621-1.  *Id.*; Doc. No. 58-22, Gov't Ex. 19 to Haydn Decl.; Doc. No. 78-1, Haydn Supp. Decl. ¶ 7.

### 2.    *Mrs. Lindsey's Tax Liability*

Mrs. Lindsey failed to file individual federal income tax returns for tax years 1998-2000 and 2003.  Doc. No. 58-3, Haydn Decl. ¶ 22.  Based on that failure, the IRS assessed federal income tax liabilities (Forms 4340) against Mrs. Lindsey using available information, including Forms 1099 and Forms W-2 for tax years 1998-2000 and 2003.  *Id.* ¶¶ 23-29; Doc. Nos. 58-23 - 58-31, Gov't Exs. 20-28 to Haydn Decl.  The IRS sent Mrs. Lindsey a Notice of Deficiency with the 1998-2000 assessments and demand for payment.  Doc. No. 58-3, Haydn Decl. ¶¶ 16-19; Doc. No. 58-31, Gov't Ex. 28 to Haydn Decl.  As of April 15, 2013, the total unpaid balance of all federal income tax liabilities assessed against Mrs. Lindsey for tax years 1998-2000 and 2003 is $25,277.99.  Doc. No. 58-3, Haydn Decl. ¶¶ 30-31.  Of that amount, $15,895.99 represents the balance due on the assessments and $9,382.00 represents accrued, but unassessed, interest pursuant to 26 U.S.C. §§ 6601, 6621(a)(2) and 26 C.F.R. § 301.6621-1.  *Id.*; Doc. No. 58-32, Gov't Ex. 29 to Haydn Decl.; Doc. No. 78-1, Haydn Supp. Decl. ¶ 9.

### 3.     *The Kiwi Property*

To satisfy the Lindseys' outstanding federal tax debt, the Government

seeks foreclosure of federal tax liens against the Kiwi property.  On June 15, 1987,

the Lindseys, as tenants by the entirety, obtained 100% interest in the Kiwi

property pursuant to a Warranty Deed.  *See* Doc. No. 58-33, Decl. of Rick Watson

¶ 14; Doc. No. 58-43, Gov't Ex. 10 to Watson Decl.  The Warranty Deed was

signed on June 15, 1987, and was recorded with the State of Hawaii Bureau of

Conveyances ("Bureau of Conveyances") on June 18, 1987.  *Id.*

On March 28, 1994, the Department of Health recorded a judgment

lien against Mr. Lindsey in the amount of $143.60 at the Bureau of Conveyances.

Doc. No. 1, Compl. ¶ 18.  On July 12, 2004, a mortgage deed against the Kiwi

property in favor of Fremont Investment and Loan in the amount of $87,000, was

recorded at the Bureau of Conveyances.  *Id.* ¶ 12.  Fremont Investment and Loan

was acquired by Signature Group and on December 9, 2010, a deed transferring the

interests of Fremont Investment and Loan to Signature Group was recorded at the

Bureau of Conveyances.  *Id.* ¶ 13.

The IRS filed Notices of Federal Tax Liens with the Bureau of

Conveyances for the 1997-2001 tax assessments against Mr. Lindsey on September

9, 2003; the 2002-03 tax assessments against Mr. Lindsey on February 6, 2007; the

1998-2000 tax assessments against Mrs. Lindsey on February 14, 2005; and the 2003 tax assessment  against Mrs. Lindsey on November 15, 2007.  Doc. No. 58-33, Watson Decl. ¶¶ 15-18; Doc Nos. 58-44 - 58-47, Gov't Exs. 11-14 to Watson Decl.

**B.     Procedural Background**

On October 31, 2011, the Government filed its Complaint against the Lindseys, Signature Group, State of Hawaii Department of Taxation ("Department of Taxation"), and the Department of Health seeking to reduce to judgment the federal tax assessments against the Lindseys, foreclose the tax liens on the Kiwi property, and "determine the validity and priority of all liens on and other interests in the" Kiwi property.  Doc. No. 1, Compl. ¶¶ 1, 7-9, A-E.  On November 16, 2011, the Government properly served the Department of Health and the Department of Taxation, Doc. Nos. 3 & 4, and on November 18, 2011, the Government properly served Signature Group.  Doc. No. 5.  Neither the Department of Health nor Signature Group filed an answer or other responsive pleading.  On December 29, 2011, the Clerk of Court entered default against the Department of Health and Signature Group.  Doc. No. 11.  On June 6, 2013, the Government filed the instant Motion for Default Judgment against Signature Group and the Department of Health.  Doc. No. 68.

Meanwhile, on April 16, 2013, the Government filed the instant

Motion for Summary Judgment, Doc. No. 58, and that same day, the court mailed

to the Lindseys a Notice to Pro Se Litigants explaining the Lindseys' obligations

regarding motions for summary judgment.  Doc. No. 60.  The Lindseys did not file

an Opposition to the Motion for Summary Judgment.[1]  On June 14, 2013, the

Government and Department of Taxation stipulated that the Government's federal

tax liens on the Kiwi property take priority over the Department of Taxation liens

should the court order foreclosure.  Doc. No. 75, Stipulation Regarding Priority

---

[1]   Although they did not file an Opposition, the Lindseys do object to this court's
jurisdiction.  On April 17, 2013, they filed their Denial to the Government's First Request for
Admissions stating that they:

> are Hawaiian subjects and "protected persons" under the 1949
> Fourth Geneva Convention, and that [they] are tax payers under
> Hawaiian Kingdom law and that this court cannot claim
> jurisdiction in the Hawaiian Islands without a treaty of cession
> whereby the Hawaiian Kingdom ceded its sovereignty to the
> UNITED STATES OF AMERICA.

Doc. No. 62; *see also* Doc. No. 58-36, Gov't Ex. 3 to Watson Decl.  Similarly, both Mr. and
Mrs. Lindsey responded to each interrogatory from the Government as follows: "This court does
not have subject matter jurisdiction because there is no treaty for cession."  Doc. Nos. 58-37 &
58-38, Gov't Exs. 4&5 to Watson Decl.

  To state the obvious, Hawaii is a state of the United States and therefore, the Lindseys'
position implying that Hawaii is not a state of the United States fails as a matter of law, and this
court can exercise jursidiction over the Lindseys.  *See United States v. Lorenzo*, 995 F.2d 1448,
1456 (9th Cir. 1993) (holding that the Hawaii district court has jurisdiction over Hawaii residents
claiming they are citizens of the Sovereign Kingdom of Hawaii); *Kupihea v. United States*, 2009
WL 2025316, at *2 (D. Haw. July 10, 2009) (dismissing complaint seeking release from prison
on the basis that plaintiff is a member of the Kingdom of Hawaii); *State v. French*, 77 Haw. 222,
228, 883 P.2d 644, 649 (Haw. App. 1994) ("[P]resently there is no factual (or legal) basis for
concluding that the [Hawaiian] Kingdom exists as a state in accordance with recognized
attributes of a state's sovereign nature.") (quotations omitted).

¶ 3.  A hearing was held on July 22, 2013.  No Defendants, including the Lindseys, appeared.

On July 26, 2013, the Government clarified the calculations of tax liabilities at issue in this action.  *See* Doc. No. 78.

### III.  <u>STANDARDS OF REVIEW</u>

**A.      Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

    "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

///

///

8

**B.      Default Judgment**

   The Clerk of Court may enter default if the defendant has "failed to

plead or otherwise defend" within the permitted time.  Fed. R. Civ. P. 55(a).

Generally, "upon default the factual allegations of the complaint, except those

relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v.*

*Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The Court has discretion

whether to enter default judgment.  *See Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th

Cir. 1956).  The Ninth Circuit applies seven factors that districts court may

consider in exercising their discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the
> merits of plaintiff's substantive claim; (3) the sufficiency
> of the complaint; (4) the sum of money at stake in the
> action; (5) the possibility of a dispute concerning
> material facts; (6) whether the default was due to
> excusable neglect; and (7) the strong policy underlying
> the Federal Rules of Civil Procedure favoring decision on
> the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

   Although the well-pleaded allegations in the complaint are taken as

true upon entry of default, *see Fair Housing of Marin v. Combs*, 285 F.3d 899, 906

(9th Cir. 2002), to obtain judgment the plaintiff must establish the relief to which it

is entitled.  *See Pope v. United States*, 323 U.S. 1 (1944); *Fair Housing of Marin v.*

*Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

# IV. <u>DISCUSSION</u>

## A.   The Lindseys' Unpaid Taxes and Associated Penalties

The Government asserts that summary judgment should be granted against the Lindseys for the assessments of unpaid taxes and penalties for income tax years 1997-2003.  Doc. No. 58-1, Pl.'s Mem. at 2.  The court agrees.

"'In an action to collect federal taxes, the government bears the initial burden of proof.'"  *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004) (*quoting Palmer v. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir. 1997)).  This burden can be met by presenting federal tax assessments.  *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983).  Certificates of Assessments and Payments ("Forms 4340") are highly probative and in the absence of contrary evidence, are sufficient to establish a tax assessment was properly made and notice and demand for payment were sent. *See Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) ("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed . . . ."); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) ("Official certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made.").

When supported by a minimal factual foundation, the IRS' assessments for taxes and related penalties are entitled to a presumption of

correctness and the burden shifts to the taxpayer to show the assessment is

incorrect.  *See In re Olshan*, 356 F.3d at 1084; *see also Palmer*, 116 F.3d at 1312

(explaining that taxpayer can rebut presumption of correctness, shifting "the

burden of proof back to the IRS" with a showing "that a determination is arbitrary,

excessive or without foundation").  If the taxpayer fails to rebut the presumption,

the government is entitled to judgment as a matter of law.  *See Hansen v. United

States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding taxpayers' declaration that they did

not receive notice of the tax assessment insufficient to show a genuine issue of fact

for trial where IRS presented Form 4340); *see also Adams v. United States*, 358

F.2d 986, 994 (Ct. Cl. 1966).

  The Government has submitted Forms 4340 calculating Mr.

Lindsey's tax liability and related penalties for tax years 1997-2003, *see* Doc. Nos.

58-4 - 58-10, Gov't Exs. 1-7 to Haydn Decl., and Mrs. Lindsey's tax liability and

related penalties for tax years 1998-2000 and 2003, *see* Doc. Nos. 58-23 - 58-26,

Gov't Exs. 20-23 to Haydn Decl., along with Haydn's Declaration supporting

those assessments.  Doc. No. 58-3, Haydn Decl. ¶¶ 1-31.  Because the

Government's showing exceeds the minimal factual foundation necessary, the

assessments receive a presumption of correctness and the burden of proof shifts to

the Lindseys to demonstrate any error.

The Lindseys, however, have not put forth any evidence that there are deficiencies in the Government's Forms 4340. Because the Lindseys fail to identify any facts that would rebut the veracity of the Forms 4340, the only permissible inference is that the assessments of Mr. Lindsey's 1997-2003 and Mrs. Lindsey's 1998-2000 and 2003 tax liabilities are valid as a matter of law. *See Adams*, 358 F.2d at 994. Accordingly, the court GRANTS the Government's Motion for Summary Judgment as to Mr. Lindsey for federal tax assessments against him for tax years 1997-2003 and as to Mrs. Lindsey for federal tax assessments against her for tax years 1998-2000 and 2003.

Pursuant to 26 U.S.C. §§ 6601(a) and (e)(2)(A), 6621, and 6622, the Government is entitled to statutory interest on income taxes and associated penalties imposed as of the date of notice and demand, which accrues daily until paid in full. *See Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993). Once a court validates a tax assessment, awarding statutory interest is mandatory. *See id.* (noting that § 6601(e)(2)(A) is a "binding statutory directive" to award interest).

Thus, the court GRANTS summary judgment with respect to the statutory interest on Mr. Lindsey's 1997-2003 and Mrs. Lindsey's 1998-2000 and 2003 assessments and penalties and ORDERS that judgment be entered against the

Lindseys for those income tax liabilities and associated penalties plus statutory interest.[2]

**B.     Attachment and Foreclosure of the Lindseys' Federal Tax Liens Against the Kiwi Property**

Because the Lindseys' federal tax liens attached to the Kiwi property, the Government is entitled to foreclosure of those liens against the Kiwi property.

Pursuant to 26 U.S.C. § 6321, after notice and demand, the Government obtains a lien "upon all property and rights to property, whether real or personal, belonging to" the taxpayer in the amount of the unpaid taxes, penalties, and interest.  A lien arises as of the date of the assessment and continues until paid.  *See* 26 U.S.C. § 6322.

Spouses who own property as tenants by the entirety in Hawaii hold a sufficient bundle of rights to constitute "property" or "rights to property" within the federal lien statute § 6321.  *See United States v. Craft*, 535 U.S. 274, 288 (2002) (concluding that, under Michigan law, husband-tenant in the entirety had sufficient "property" or "rights to property" for the purposes of the federal tax lien statute); *see also United States v. Webb*, 2008 WL 4761745, at *4 & n.10 (D. Haw.

---

[2]  As of April 15, 2013, Mr. Lindsey owed the Government $210,090.78, and Mrs. Lindsey owed the Government $25,277.99 in federal tax liabilities, including penalties and interest.  Doc. No. 58-3, Haydn Decl. ¶¶ 20-21, 30-31.

Oct. 23, 2008) (reaching same conclusion under Hawaii law following examination of similarities between Michigan law, at issue in *Craft,* and Hawaii law).  IRS tax liens, therefore, attach to a debtor's interest in Hawaii property owned as a tenant by the entirety.  *See id.*; *see also In re Pletz*, 221 F.3d 1114, 1118 (9th Cir. 2000).

The Government's tax liens are perfected upon assessment, *see United States v. Vermont*, 377 U.S. 351, 355 (1964), and are effective against the taxpayer and other lienholders without filing notice.  *See* 26 U.S.C. §§ 6321, 6323(a).  Because all of the Lindseys' federal tax liens were perfected, they became valid against them and other lienholders on April 11, 2011 -- the date of assessment of the Lindseys' 1997-2003 tax liabilities.  *See* Doc. Nos. 58-4 - 58-10, 58-23 - 58-26, Gov't Exs. 1-7, 20-23 to Haydn Decl.  Accordingly, the court ORDERS that the Lindseys' Federal Tax Liens be foreclosed against the Kiwi property.

## C.    Sale of the Kiwi Property

Pursuant to 26 U.S.C. § 7403, the Government may enforce a lien by commencing an action in the district court, joining all parties with an interest in the property, and obtaining a judicial sale of the property.  *See United States v. Rodgers*, 461 U.S. 677, 691-92 (1983) (stating that § 7403 grants the power to a

14

federal district court to order the sale of a delinquent taxpayer's home); *In re Pletz*, 221 F.3d at 1118.  Section 7403(c) states, in pertinent part, that

> [t]he court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

"[I]n order to enforce a lien and collect on justly owed debts, the district court is empowered to order the sale of property to satisfy the tax debt of one tenant, so long as it compensates the nondebtor spouse for his or her interest." *In re Pletz*, 221 F.3d at 1117-18 (noting that § 7403 "explicitly allows a lien creditor like the IRS to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife"); *see also Rodgers*, 461 U.S. at 680.[3]

---

[3]  Each spouse owns a fifty percent interest in property held as tenants by the entirety. *See, e.g.*, *Popky v. United States*, 419 F.3d 242, 245 (3d Cir. 2005) (affirming district court's valuation of non-debtor's fifty percent interest in the proceeds of property sale); *United States v. Ryan*, 2005 WL 6153137, at *3 (W.D. Mo. July 19, 2005) (valuing each spouse's interest in property held as tenants by the entirety at fifty percent and dividing proceeds from foreclosure sale equally); *Mfrs. & Traders Trust Co. v. Ruff*, 2003 WL 21439883, at *2 (N.D. Ill. June 19, 2003) (holding tenant by the entirety is entitled to half surplus from foreclosure sale); *see also In re Dean's Trust*, 47 Haw. 629, 647, 394 P.2d 432, 441-42 (1964) (stating wife was entitled to one-half of the profits from property held with husband as tenant by the entirety).

The Government has complied with § 7403.  The Lindseys have refused to pay their federal tax liabilities, and as a result, this court has foreclosed their federal tax liens against the Kiwi property.  The Government commenced this action in the district court and all parties "having liens upon or claiming any interest in the property involved in such action" at the time of filing have been named as Defendants.  *See* Doc. No. 1, Compl. ¶¶ 5-9.  The Department of Taxation stipulated to the priority of the Government's tax liens against the Kiwi property.  Doc. No. 75.  And as discussed below, the court grants default judgment against Signature Group and the Department of Health, thereby extinguishing any interest they may have held in the Kiwi property.  Accordingly, pursuant to § 7403, this court ORDERS the sale of the Kiwi property to satisfy the Lindseys' federal tax liens.

## D.      Default Judgment Against Signature Group Holdings, Inc. and the Department of Health

The Government seeks default judgment against Signature Group and the Department of Health, thereby extinguishing any interest either Defendant may hold in the Kiwi property.  Neither Defendant has appeared in this action and the Clerk of Court entered default against both Defendants on December 29, 2011. Doc. No. 11.

Application of the *Eitel* factors supports this court's finding that the Government is entitled to default judgment against Signature Group and the Department of Health.  First, the Government has diligently litigated the instant case and will be prejudiced if the interests of Signature Group and the Department of Health in the Kiwi property are not extinguished and these Defendants are not precluded from objecting to the Government foreclosing its federal tax liens against the Kiwi property.  Second, the court finds that the Complaint sufficiently alleges substantive claims.  Third, the amount of the Department of Health's possible interest in the Kiwi Properly is minimal.  Fourth, while Signature Group's possible interest is more substantial, extinguishment of its interest in the Kiwi property would not affect any amount the Lindseys may owe Signature Group. Fifth, because neither Signature Group nor the Department of Health has appeared in this action, there is no possibility of a dispute over material facts.  Sixth, there is no indication that their default was due to excusable neglect.  Thus, the first six *Eitel* factors weigh in favor of default judgment.  The final factor -- the strong policy favoring decisions on the merits -- is the only factor weighing against default judgment, but it is far outweighed by the factors favoring default judgment. Having considered all seven factors, this court finds that default judgment against

Signature Group and the Department of Health is warranted.  Accordingly, the

court GRANTS the Government's Motion for Default Judgment.

## V.  CONCLUSION

Based on the foregoing, the court GRANTS the Government's Motion

for Summary Judgment, GRANTS the Government's Motion for Default

Judgment, and ORDERS (1) that the Lindseys' federal income tax liabilities and

associated penalties plus interest be reduced to judgment, (2) that the Lindseys'

federal tax liens be foreclosed on the Kiwi property, and (3) sale of the Kiwi

property.  A separate Order of Foreclosure and Judicial Sale will follow this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 30, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Lindsey, et al.*, Civil No. 11-00664 JMS-KSC, Order Granting the
Government's: (1) Motion for Summary Judgment; and (2) Motion for Default Judgment